# No. 24-_____

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

IN RE URZ TRENDZ, LLC,

*Petitioner-Defendant*

---

On Petition for Writ of Mandamus from an Order Precluding The Filing of Motion for Summary Judgment, Entered October 10, 2024 from United States District Court, Southern District of Texas, Houston Division, No. 4:22-cv-03705 (The Hon. Charles Eskridge)

---

# PETITION FOR WRIT OF MANDAMUS

---

Louis F. Teran
SLC LAW GROUP
1055 E. Colorado Boulevard
Pasadena, CA 91106
(818) 484-3217 x200
  *Counsel for Petitioner-Defendant*

# <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **PETITIONER** | **RESPONDENT** |
|---|---|
| URZ Trendz, LLC. | Spectrum Laboratories, LLC |
| | |
| **Counsel for Petitioner** | **Counsel for Respondent** |
| Louis F. Teran | David B. Cupar |
| SLC LAW GROUP | *Attorney in Charge* |
| 1055 E. Colorado Blvd., Suite 500 | dcupar@mcdonaldhopkins.com |
| Pasadena, CA 91106 | Matthew J. Cavanagh |
| Telephone: (818) 484-3217 x200 | mcavanagh@mcdonaldhopkins.com |
| Facsimile: (866) 665-8877 | **MCDONALD HOPKINS LLC** |
| Email: LTERAN@SLCLG.com | 600 Superior Avenue, East |
| | Suite 2100 |
| | Cleveland, Ohio 44114 |
| | Telephone: 216.348.5400 |
| | Facsimile: 216.348.5474 |
| | |
| | Courtney Ervin |
| | cervin@hicks-thomas.com |
| | D. Ryan Cordell, Jr. |
| | rcordell@hicks-thomas.com |
| | **HICKS THOMAS LLP** |
| | 700 Louisiana St., Suite 2000 |
| | Houston, Texas 77002 |
| | Telephone: 713.547.9100 |
| | Facsimile: 713.547.9150 |

/s/Louis F. Teran
Louis F. Teran
Attorney of Record for Petitioner

# TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………..…1

RELIEF SOUGHT……………………………………………………………………4

ISSUES PRESENTED………………………………………………………………...4

BACKGROUND…………………….…………………………………………………5

ARGUMENT…………………………………………………………………………9

   I.    MANDAMUS IS WARRANTED BECAUSE THE DISTRICT COURT ABUSED ITS DISCRETION IN IN PRECLUDING URZ FROM FILING A MOTION FOR SUMMARY JUDGMENT PURSUANT FED.R.CIV.P. 56(d), THUS, DENYING OR DELAYING JUSTICE FOR URZ ........................................................................10

      A. Spectrum's Trademark Registration is Invalid for Unlawful Use.........................11

      B. Spectrum's Trademark Registration is Unenforceable Pursuant To The Doctrine of Unclean Hands .......................................................................................... 16

      C. Spectrum's Trademark Dilution Claim Cannot Stand as a Matter of Law ........... 18

  II.    URZ HAS NO OTHER WAY TO OBTAIN RELIEF .................................................21

 III.    THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES ........................22

CONCLUSION…………………………………………………………………...23

# TABLE OF AUTHORITIES

## CASES

AK Futures LLC v. Boyd St. Distro, LLC
  35 F.4th 682 (9th Cir. 2022) ...................................................................................... 12

Avery Dennison Corp. v. Sumpton
  189 F.3d 868 (9th Cir.1999) ....................................................................................... 18

Campbell Harrison & Dangley, LLP v. PBL Multi-Strategy Fund, LP
  744 Fed.Appx. 192 (5th Cir 2018) ............................................................................. 10

Coahoma Chem. Co., Inc. v. Smith
  113 USPQ 413 (Comm'r Pat. 1957) ........................................................................... 12

Cooter & Gell v. Hartmarx Corp.
  496 U.S. 384 (1990) ..................................................................................................... 10

CreAgri, Inc. v. USANA Health Services, Inc.
  474 F.3d 626 (9th Cir. 2007) ................................................................................. 12, 13

Dessert Beauty, Inc. v. Fox
  617 F. Supp. 2d 185 (S.D.N.Y. 2007) ........................................................................ 17

Gray v. Daffy Dan's Bargaintown
  3 USPQ2d 1306 (Fed. Cir. 1987) ............................................................................... 12

In re Brown
  119 USPQ2d 1350 (TTAB 2016) ............................................................................... 12

In re Dean
  527 F.3d 391 (5th Cir. 2008) ........................................................................................ 9

In re JJ206, LLC
  120 USPQ2d 1568 (TTAB 2016) ............................................................................... 12

In Re Morgan Brown
  119 U.S.P.Q.2d 1350 (T.T.A.B. July 14, 2016) ......................................................... 13

In re PharmaCann, LLC
  123 USPQ2d 1122 (TTAB 2017) ............................................................................... 12

In re United States
  397 F.3d 274 (5th Cir. 2005) ........................................................................................ 9

In re Volkswagen of Am., Inc.
  545 F.3d 304 (5th Cir. 2008) ........................................................................................ 9

Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi
  Negara
  364 F.3d 274 (5th Cir. 2004) ...................................................................................... 10

Krim v. Banc Texas Grp., Inc.
  989 F.2d 1435 (5th Cir. 1993) ................................................................... 10

Louis Vuitton Malletier S.A. v. Haute Diggity Dog
  507 F.3d 252 (4th Cir.2007) ...................................................................... 19

Moseley v. V. Secret Catalogue, Inc.
  537 U.S. 418 (2003) ................................................................................... 19

Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.
  324 U.S. 806 (1945) ................................................................................... 16

Resolution Tr. Corp. v. Sharif-Munir-Davidson Dev.Corp.
  992 F.2d 1398 (5th Cir. 1993) ................................................................... 10

S. California Darts Ass'n v. Zaffina
  762 F.3d 921 (9th Cir. 2014) ..................................................................... 12

Thane Intern., Inc. v. Trek Bicycle Corp.
  305 F.3d 894 (9th Cir.2002) ...................................................................... 20

U.S. v. Denson
  603 F.2d 1143 (5th Cir. 1979) ..................................................................... 9

United Phosphorus, Ltd. v. Midland Fumigant, Inc.
  205 F.3d 1219 (10th Cir. 2000) ................................................................. 12

United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.
  444 F.3d 462 (6th Cir. 2006) ..................................................................... 21

Universal Mfg. Co. v. Douglas Press, Inc.
  1992 WL 106822 (N.D. Ill. May 15, 1992) ............................................... 17

Wichita Falls Office Assocs. v. Banc One Corp
   978 F.2d 915 (5th Cir. 1992) .................................................................... 10


**STATUTES**

15 U.S.C. §1051 ................................................................................... 11, 13

28 U.S.C. §1651(a) ..................................................................................... 9

Fed.R.Civ.P. 45 .......................................................................................... 5

Fed.R.Civ.P. 45(d) ..................................................................................... 5

Fed.R.Civ.P. 56(b) ..................................................................................... 3

Fed.R.Civ.P. 56(d) ......................................... 2, 3, 4, 8, 9, 10, 16, 18, 21

Texas Health & Safety Code §481.133 ............................................ 1, 6, 14

# OTHER AUTHORITIES

6 McCarthy on Trademarks and Unfair Competition § 31:58.50 (5th ed.)......................12

H.R.Rep. No. 104–374 (1995).........................................................................19

Nice Agreement, Eleventh Edition, version 2022 (NCL 11-2022)...................................5

S.Rep. No. 100–515 (1988)...........................................................................19

The Rational Basis for Trademark Protection, 40 HARV. L.REV. 813
(1927) ...........................................................................................19

# INTRODUCTION

This case arises from claims of trademark infringement asserted by Respondent Spectrum Laboratories, LLC ("Spectrum") regarding the federally registered trademark "QUICK FIX" used in connection with "synthetic urine" or "fake pee". Petitioner URZ Trendz, LLC ("URZ") became involved in this case when Spectrum issued a non-party subpoena seeking information related to infringing products. URZ timely responded with objections to the subpoena. Then, Spectrum filed a motion to compel and amended its Complaint to add URZ as a defendant. Now, the District Court has precluded URZ from filing a motion for summary judgment that can potentially dismiss all or some of Spectrum's claims. Thus, URZ hereby seeks relief from this Court.

Upon being served with the Amended Complaint, URZ filed counterclaims alleging primarily that Spectrum's trademark is invalid due to illegal use and fraud on the United States Patent and Trademark Office ("USPTO"). More specifically, URZ alleges that Spectrum uses its trademark in connection with synthetic urine or fake pee used to falsify urine drug tests conducted by government agencies, employers, and law enforcement. In fact, the sale of such product is in direct violation of Texas Health & Safety Code §481.133 which makes the sale of such product punishable by imprisonment as a Class A misdemeanor. Even more, Spectrum attained its trademark registration by falsely representing to the USPTO

1

that its synthetic urine is used for medical research. In fact, Spectrum also falsely represented to the District Court in this case that its synthetic urine is used for medical research.

Spectrum filed a motion to dismiss URZ's counterclaims which the District Court denied by holding as follows:

> "…it strains the imagination (at least on this record) to discern widespread legal uses for a self-warming, synthetic, human urine product apart from the unlawful evasion of drug tests."

Subsequently, the District Court issued a discovery order for URZ to produce documents related to its sale and purchase of "QUICK FIX" products. Thus, URZ produced such documents. Spectrum was not satisfied with URZ's production and filed a motion for sanctions. Then, URZ filed a Motion for Summary Judgment based primarily on the issue of whether Spectrum's trademark registration is valid and enforceable. Spectrum responded by filing a Motion to Defer Briefing on URZ's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(d).

The District Court denied, in part, Spectrum's motion for sanctions and issued an Order requiring forensic discovery of URZ. In addition, the District Court granted Spectrum's Motion to Defer Briefing on URZ's Motion for Summary Judgment and issued an order precluding URZ from filing a motion for summary judgment without leave from the District Court.

URZ then filed a Petition of Writ of Mandamus seeking this Court to review the District Court's forensic discovery order. This Court denied URZ's petition. Thus, URZ complied with the District Court's forensic discovery order and filed a Motion for Leave to File a Motion for Summary Judgement. Spectrum disputes that URZ fully complied with the forensic discovery order and points to some deficiencies in the forensic discovery of URZ's ESI assets. The District Court denied URZ's Motion for Leave to File a Motion for Summary Judgment and set a hearing to evaluate URZ's failure to fully comply with the forensic discovery order.

Now, URZ hereby files this petition for a writ of mandamus seeking this Court to direct the District Court to allow URZ to file its Motion for Summary Judgment.

This case cries out for this Court's review. First, this case strikes at the heart of a district court's authority to use Fed.R.Civ.P. 56(d) as a sword to delay or deny justice to a litigant. In fact, Fed.R.Civ.P. 56(b) expressly allows a motion for summary judgment to be filed at any time until 30 days after the close of discovery. Even more, this Court has repeatedly held that continuance of a summary judgment can only take place if it is demonstrated specifically how the requested discovery pertains to the pending motion. In the present case, URZ's motion for summary judgment primarily challenges the validity of Spectrum's

3

trademark registration based on Spectrum's illegal use thereof.  On the other hand, Spectrum's requested forensic discovery relates only to URZ's sale of the accused product.  In other words, URZ's motion for summary judgment targets the validity and enforceability of Spectrum's trademark registration while Spectrum's requested forensic discovery merely targets URZ's use of the trademark.  The two are not related.  More specifically, Spectrum's requested discovery does not pertain to URZ's motion for summary judgment.

Based on the arguments set forth below, only this Court can properly address these issues and set a proper standard for this case and other cases in this Circuit.

## RELIEF SOUGHT

Petitioner URZ Trendz, LLC ("URZ") respectfully requests this Court to issue a writ of mandamus directing the District Court to allow URZ to file a Motion for Summary Judgment on issues not related to URZ's use of the trademarks, such as, the validity and enforceability of Spectrum's trademark registration.

## ISSUES PRESENTED

Whether the District Court abused its discretion in precluding URZ from filing a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(d), thus, delaying or denying justice for URZ.

## BACKGROUND

This case was first filed in October 2022 by Spectrum Laboratories, LLC ("Spectrum") against Royal Fragrances, LLC and other defendants ("Royal Defendants") with allegations of trademark infringement and counterfeiting the trademark "QUICK FIX" (Dkt 1) that is federally registered in connection with "synthetic urine" under International Class 001 (Dkt 1-1) which is reserved specifically for "[c]hemicals used in industry, science and photography, as well as in agriculture, horticulture and forestry." See *Nice Agreement, Eleventh Edition*, version 2022 (NCL 11-2022). Spectrum's claims against the Royal Defendants were dismissed after Royal provided a sworn affidavit identifying its suppliers of the infringing products. Dkt 99-1 at p.5, ℙ9. It is noteworthy that Royal did NOT identify Petitioner URZ Trendz, LLC ("URZ") as a supplier of infringing products. Dkt 99-1 at p.5, ℙ9.

In March 2023, Spectrum served on URZ a non-party subpoena pursuant to Fed.R.Civ.P. 45(a). Dkt 110, p.1. The subpoena sought documents "to identify which entities provided URZ Trendz with the products alleged to be counterfeit in this action." Dkt 110, p.1. URZ timely responded to the subpoena with objections pursuant to Fed.R.Civ.P. 45(d)(2)(B). Dkt 110, p.1. Then, Spectrum filed a Motion to Compel pursuant Fed.R.Civ.P. 45(d)(2)(B)(i). Dkt 110, P.2. The day after Spectrum filed its Motion to Compel, the District Court held an Initial

5

Conference in which it granted Spectrum's Motion to Compel without allowing URZ any opportunity to be heard on the issue.  In fact, URZ was not informed about the Initial Conference and had not yet been served with the Motion to Compel when the Initial Conference was held.  Dkt 99-1, p.20-21.  Then, Spectrum filed a Second Amended Complaint adding URZ as a party.  Dkt 50.  Spectrum acknowledges that it added URZ based partly on the District Court's recommendation after URZ filed objections to the subpoena.  Dkt 50, p.7, ¶27.

In response to the Second Amended Complaint, URZ filed counterclaims seeking the invalidation of Spectrum's trademark registration based on Spectrum's unlawful use thereof.  Dkt 64.  More specifically, URZ alleges that Spectrum uses its trademark in connection with synthetic urine or fake pee used to falsify urine drug tests conducted by government agencies, employers, and law enforcement.  Dkt 64, p.15-17.  In fact, the sale of such products is in direct violation of Texas Health & Safety Code §481.133 which makes the sale of such products punishable by imprisonment as a Class A misdemeanor.  Dkt 64, p.16.

Spectrum has denied that it sells synthetic urine for illegal purposes.  Instead, Spectrum has expressly represented to the District Court as follows:

> "Plaintiff Spectrum sells a synthetic urine product called QUICK FIX. Synthetic urine has beneficial uses, including for medical research, urinalysis calibration, product and material testing, and animal repellent/lure."  Dkt 29, p.2-3, ¶3.

But, despite such representation, Spectrum actually sells synthetic urine or fake pee for the falsification of urine drug tests. In fact, Spectrum's synthetic urine is advertised as follows:

> "What is synthetic urine? - Synthetic urine, also known as fake urine or fake pee, resembles the chemical structure and physical properties of real human urine…
>
> Fake pee is mostly used to pass urine tests that a person, prank, or sports event organizer can order. In most of these cases, getting caught with traces of toxins in the body can have far-reaching consequences. Instead of facing problems, many people opt to use Quick Fix Synthetic Urine or the larger 3oz Quick Fix Synthetic Urine 6.3 plus bottle. Submitting fake pee instead of human urine is widely considered to be one of the most effective ways to pass urine tests that you would otherwise fail.
>
> If you recently consumed toxic substances, such as nicotine, Quick Fix is the best synthetic urine kit to help you pass. It is indistinguishable from human urine, even at a molecular level." Dkt 64, p.29 (Ex. C).

Despite such advertisement, Spectrum filed a Motion to Dismiss URZ's counterclaims which the District Court denied by holding as follows:

> "…it strains the imagination (at least on this record) to discern widespread legal uses for a self-warming, synthetic, human urine product apart from the unlawful evasion of drug tests." Dkt 78, p.2.

Then, in August 2023, the District Court issued a discovery order related to "QUICK FIX" products. Dkt 63. Pursuant to the discovery order, URZ timely produced records related to its purchases and sales of "QUICK FIX" products. Dkt 83-4. Such purchasing records produced by URZ identifies two (2) suppliers from whom URZ purchased "QUICK FIX" products. Dkt 83-4. Subsequenlty, URZ

supplemented its document production with more documents related to its sales and purchases of "QUICK FIX" products.  Dkt 81, p.4.  Dkt 99-1, p.35-36.  Nevertheless, Spectrum filed a Motion for Sanctions alleging that URZ had not fully complied with the discovery order.

On February 13, 2024, the District Court held a hearing regarding Spectrum's Motion for Sanctions.  Dkt 99-1, p.26-85 (Reporter's Transcript of Hearing).  At the hearing, Spectrum's counsel falsely and audaciously represented to the District Court that the Royal Defendants had identified URZ as their supplier of infringing or counterfeit products.  Dkt 99-1, p.63.  In fact, subsequently, it was discovered that Royal Defendants had submitted an affidavit which does NOT indicate that URZ supplied infringing or counterfeiting products.  Without knowledge of said affidavit, the District Court issued an order denying sanctions but expressing an intent to order forensic discovery against URZ.  Dkt 97.

Subsequently URZ filed a Motion for Summary Judgment seeking the District Court to adjudicate the validity and enforceability of Spectrum's trademark.  Spectrum responded with a Motion to Defer Briefing on URZ's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(d).  Dkt 106.  In granting Spectrum's Motion to Defer Briefing, the District Court precluded URZ from filing any motion for summary judgment until after URZ complies with the District Court's forensic discovery order.  Dkt 110.

Then, after complying with the District Court's forensic discovery order, URZ filed a Motion for Leave to File a Motion for Summary Judgment. Dkt 121. The District Court has now denied URZ's motion. Dkt 129. Essentially, justice for URZ has been delayed or denied unjustifiably pursuant to Fed.R.Civ.P. 56(d).

Therefore, URZ now hereby submits this petition for writ of mandamus.

### ARGUMENT

Under the All Writs Act, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. See *28 U.S.C. §1651(a)*. Mandamus "is extraordinary remedy for extraordinary causes." See *U.S. v. Denson,* 603 F.2d 1143, 1146 (5th Cir. 1979). "A writ of mandamus may issue only if (1) the petitioner has 'no other adequate means' to attain the desired relief; (2) the petitioner has demonstrated a right to issuance of a writ that is 'clear and indisputable;' and (3) the issuing court, in the exercise of its discretion, is satisfied that the writ is 'appropriate under the circumstances'." See *In re Dean,* 527 F.3d 391, 394 (5th Cir. 2008) (quoting *In re United States,* 397 F.3d 274, 282 (5th Cir. 2005)). These hurdles are demanding but mandamus is appropriate where there has been a clear abuse of discretion. See *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 311 (5th Cir. 2008).

**I. MANDAMUS IS WARRANTED BECAUSE THE DISTRICT COURT ABUSED ITS DISCRETION IN IN PRECLUDING URZ FROM FILING A MOTION FOR SUMMARY JUDGMENT PURSUANT FED.R.CIV.P. 56(d), THUS, DENYING OR DELAYING JUSTICE FOR URZ**

It is established that a district court abuses its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). The law relevant to this matter is Fed.R.Civ.P. 56(d) which states as follows:

> "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order."

This Court reviewed Fed.R.Civ.P. 56(d) and held, in part, as follows:

> "When a party requests a continuance of a summary judgment motion to conduct discovery, the moving party must…demonstrate to the trial court specifically how the requested discovery pertains to the pending motion… [T]he party must explain how the additional discovery will create a genuine issue of material fact and may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." See *Campbell Harrison & Dangley, LLP v. PBL Multi-Strategy Fund, LP,* 744 Fed.Appx. 192, 197 (5th Cir 2018) (citing *Wichita Falls Office Assocs. v. Banc One Corp.,* 978 F.2d 915, 919 (5th Cir. 1992); *Krim v. Banc Texas Grp., Inc.,* 989 F.2d 1435, 1442 (5th Cir. 1993); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 364 F.3d 274, 304-05 (5th Cir. 2004); and *Resolution Tr. Corp. v. Sharif-Munir-Davidson Dev.Corp.,* 992 F.2d 1398, 1401 (5th Cir. 1993)).

In the present case, Spectrum submitted the required affidavit or declaration stating as follows:

> "25. Spectrum needs the facts and information sought in its proposed order and outlined in paragraphs 15 and 21 of this declaration to adequately respond to URZ's claims in its motion for summary judgment that no evidence exists that URZ has sold counterfeit or infringing copies of Spectrum's Quick Fix product." Dkt 106-1, ¶25.

The facts and information outlined in paragraphs 15 and 21 of the affidavit all relate to URZ's sale of QUICK FIX products. Dkt 106-1, ¶15 and 21. However, whether URZ sold QUICK FIX products is NOT related to URZ's motion for summary judgment which primarily focuses on the validity of Spectrum's Trademark Registration based on Spectrum's own use of the Trademark. The issues raised in URZ's motion for summary judgment are explained in detail below.

A.  **Spectrum's Trademark Registration is Invalid for Unlawful Use**

Under Section 1(a) of the Lanham Act (15 U.S.C. §1051), a trademark may not be registered unless it is "used in commerce". Section 45 of the Lanham Act defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade." In addition, "[t]he word 'commerce' means all commerce which may lawfully be regulated by Congress." See *Id*. "A valid [trademark] application cannot be filed at all for registration of a mark without 'lawful use in commerce…'" See *Gray v. Daffy Dan's Bargaintown*, 3 USPQ2d 1306, 1308

11

(Fed. Cir. 1987). The Trademark Trial and Appeal Board ("TTAB") has "consistently held that, to qualify for a federal…registration, the use of a mark in commerce must be 'lawful'." See *In re PharmaCann, LLC*, 123 USPQ2d 1122, 1123-24 (TTAB 2017) (quoting *In re JJ206, LLC*, 120 USPQ2d 1568, 1569 (TTAB 2016) and *In re Brown*, 119 USPQ2d 1350, 1351 (TTAB 2016) (affirming unlawful use refusals to register marks for marijuana-related products or services)). See also *Coahoma Chem. Co., Inc. v. Smith*, 113 USPQ 413, 418 (Comm'r Pat. 1957), affirmed on other grounds, 121 USPQ 215 (CCPA 1959) ("[U]se of a mark in connection with unlawful shipments in interstate commerce is not use of a mark in commerce which the Patent and Trademark Office may recognize.").

In fact, several districts have recognized unlawful use as a defense to an infringement action. See *S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 931 (9th Cir. 2014) (quoting *CreAgri, Inc. v. USANA Health Services, Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) and citing *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1225 (10th Cir. 2000)) ("[O]nly lawful use in commerce can give rise to trademark priority."). See also *6 McCarthy on Trademarks and Unfair Competition* § 31:58.50 (5th ed.). Courts have found that a trademark can't be used with goods that are illegal. See *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 689 (9th Cir. 2022) ("This rule prevents the absurd result of the government 'extending the benefits of trademark protection to a seller based upon

12

actions the seller took in violation of that government's own laws.'  And it favors sellers who take the time to comply with government regulation before bringing products to market.")

Thus, where a trademark's use in commerce is not lawful, the mark may be canceled.  See, e.g., *CreAgri, Inc. v. USANA Health Scis., Inc*., 474 F.3d 626, 634 (9th Cir. 2007) (cancelation of trademark was proper where product was mislabeled in violation of federal requirements).  See also *In Re Morgan Brown*, 119 U.S.P.Q.2d 1350 (T.T.A.B. July 14, 2016) ("We have consistently held that, to qualify for a federal service mark registration, the use of a mark in commerce must be lawful.").

In the present case, URZ seeks the cancellation or invalidation of Spectrum's trademark registration under the assertion that Spectrum's use of its trademark is in connection with the sale or offer for sale of illegal fake pee to promote the falsification of drug test results.   Such use does not meet the "use in commerce" requirement of Section 1(a) of the Lanham Act (15 U.S.C. §1051).  In other words, Spectrum's failure to "use [its trademark] in commerce" as required by the Lanham Act, invalidates Spectrum's trademark as a matter of law.  In fact, Spectrum's trademark registration was issued for use in connection with "synthetic urine" for medical purposes.  But in reality, Spectrum's "synthetic urine" is advertised and sold as a product to falsify drug test results.  After all, Spectrum's

"synthetic urine" is advertised in the marketplace as follows:

> "What is synthetic urine?  -  Synthetic urine, also known as fake urine or fake pee, resembles the chemical structure and physical properties of real human urine…
> ***Fake pee is mostly used to pass urine tests*** that a person, prank, or sports event organizer can order.  In most of these cases, getting caught with traces of toxins in the body can have far-reaching consequences.  Instead of facing problems, many people opt to use Quick Fix Synthetic Urine or the larger 3oz Quick Fix Synthetic Urine 6.3 plus bottle.
>
> Submitting fake pee instead of human urine is widely considered to be one of the most effective ways to pass urine tests that you would otherwise fail.
>
> If you recently consumed toxic substances, such as nicotine, Quick Fix is the best synthetic urine kit to help you pass.  It is indistinguishable from human urine, even at a molecular level."  Dkt 103-1, p.42.

Even more, Spectrum also uses its trademark in connection with a "Belt Kit" that allows the fake urine to be hidden around the waist underneath clothing so that it appears that a consumer is actually urinating into a cup during a drug test.  Dkt 103-1, p.32.  But when the "Belt Kit" does not work, Spectrum sells a specially designed underwear with a hidden pocket into which the fake urine can be hidden.  Dkt 103-1, p.36.

The overwhelming evidence shows that Spectrum is in the business of manufacturing and selling substances and devices designed to falsify drug test results.  Such is a blatant violation of Texas Health & Safety Code §481.133 which makes the sale of products to falsify drug tests punishable by imprisonment as a

Class A misdemeanor.  After all, Spectrum's "synthetic urine" is further advertised as follows:

> "Best Synthetic Urine Brand – In this day and age, synthetic products are in demand.  Despite efforts by law enforcement and governments to shut down the use of synthetic urine, there is pushback by the consumer, and the consumers are sending a clear message: 'we want it, and we need it'."  Dkt 103-1, p.46.

In fact, there is an abundance of websites in the internet that provide detailed product reviews of Spectrum's "synthetic urine".  Such websites expressly describe Spectrum's product as follows:

> "Drug abuses have become alarming throughout the world.  This menace causes many workplace hassles such as absenteeism, irregularity, accidents, wrong working and loss of reputation.  In order to stay clear of all these, job seekers and employees have to pass drug tests.  In such situations Quick Fix Synthetic Urine comes into play.  ***Quick Fix Synthetic Urine is nothing but a fake pee used by the candidates to deceive the lab tests***.  Quick Fix Synthetic Urine is made using real clean human pee and makes it resemble a real human urine from all aspects such as appearance, color, ingredients, specific gravity and ph values."  Dkt 103-1, p.51.

> "***What makes the product the best synthetic urine of 2023 for passing a drug urine test is its exact specifications***. It is unisex and it gets ready quickly.  You'd need some chemistry experience to use fake pee from other brands.  However, Quick Fix synthetic urine comes in a premixed form.  The product works differently compared to powdered or dehydrated urine.
> …
> Though useful, ***Quick Fix synthetic urine is meant for a five-panel basic urine test*** that doesn't take place under supervision or strict monitoring.  You can use this fake pee to pass a drug urine test only if you get an opportunity to pour it at the time of sample collection.  It is not meant for tests in which you are required to give your sample by peeing under the observation of a supervisor.  With that

being said, the best part is that around 95% of pre-employment tests are unsupervised.  Therefore, you are likely to find Quick Fix synthetic urine useful for the majority of pre-employment tests."  Dkt 103-1, p.61-62.

Thus, there can be little doubt that Spectrum's "synthetic urine" is intended to be used and is used by consumers unlawfully to falsify drug tests.  In fact, the U.S. Government's Department of Defense Drug Reduction and Deterrence Program has specifically identified Plaintiff's synthetic urine as a sophisticated fake pee that can falsify the most advanced drug tests.  Dkt 103-1, p.78.

Accordingly, the discovery sought by Spectrum relating to URZ's purchase and sale of QUICK FIX products is entirely unrelated to URZ's Motion for Summary Judgement which seeks to invalidate Spectrum's trademark registration based on Spectrum's own use thereof.  As such, the District Court abused its discretion in using Fed.R.Civ.P. 56(d) to preclude URZ from filing its Motion for Summary Judgment on this issue.

**B.      Spectrum's Trademark Registration is Unenforceable Pursuant To The Doctrine of Unclean Hands**

The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant."  See *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co*., 324 U.S. 806, 814 (1945).  Although equity does not demand that the parties "have led blameless lives ... it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue."  See *Id*. at 814–15.  For the doctrine to apply, a party's conduct does not need to be one punishable as a crime or one that

would justify legal proceedings of any sort.  See *Id.* at 815.  "Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause" for the court to invoke the doctrine.  See *Id.*  In fact, several district courts have held that the unlawful use defense against trademark infringement "has its origins in the common law doctrine of unclean hands," and serves as a "way of preventing the government from having to extend the benefits of trademark protection to a seller who violates laws."  See *Dessert Beauty, Inc. v. Fox*, 617 F. Supp. 2d 185, 190-91 (S.D.N.Y. 2007).  See also *Universal Mfg. Co. v. Douglas Press, Inc.*, 1992 WL 106822, at *2 (N.D. Ill. May 15, 1992) ("[C]ourts have barred plaintiffs from asserting their trademark rights where plaintiff's uses of their trademarks, as opposed to their conduct in obtaining them, were illegal.").

In the present case, as discussed above, Spectrum has filed this lawsuit to protect its criminal enterprise of selling synthetic urine to drug addicts who need it to falsely pass urine tests routinely conducted by employers, law enforcement, and government agencies.  Spectrum's entire business operation is unclean and in violation of Texas Health & Safety Code §481.133.  In other words, Spectrum promotes fraudulent activity and directly profits from selling products that allow its customers to defraud their employers, law enforcement, and government agencies.  Now with this lawsuit, Spectrum seeks to protect its unclean business operation.

17

More specifically, Spectrum seeks the District Court to ratify Spectrum's use of its trademark with illegal products. A judgment favorable to Spectrum would essentially endorse Spectrum's illegal activities. Thus, it is important that the District Court close its doors to Spectrum's illegal activities and summarily dismiss its claims.

Accordingly, the discovery sought by Spectrum relating to URZ's purchase and sale of QUICK FIX products is entirely unrelated to URZ's Motion for Summary Judgement which seeks the dismissal of Spectrum's claims based on Spectrum's own unclean hands. As such, the District Court abused its discretion in using Fed.R.Civ.P. 56(d) to preclude URZ from filing its Motion for Summary Judgment on this issue.

C.     **Spectrum's Trademark Dilution Claim Cannot Stand as a Matter of Law**

Spectrum asserts a claim for trademark dilution based on the allegation that Spectrum's trademark is distinctive and famous. Dkt No 50, ¶66. Trademark dilution is a cause of action invented and reserved for a select class of marks—those marks with such powerful consumer associations that even non-competing uses can impinge on their value. See *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir.1999) (citing the seminal trademark article by Frank L. Schechter, *The Rational Basis for Trademark Protection*, 40 HARV. L.REV. 813

(1927), which proposed a cause of action for dilution).  Dilution causes of action,

much more so than infringement and unfair competition laws, tread very close to

granting "rights in gross" in a trademark.  See *Id.*  The legislative history shows a

similar concern. Congress passed the anti-dilution legislation because it sought to

protect unauthorized users of famous marks from those "attempt[ing] to trade upon

the goodwill and established renown of such marks," regardless of whether such

use causes a likelihood of confusion about the product's origin.  See *H.R.Rep. No.*

*104–374*, at 3 (1995) reprinted in 1995 U.S.C.C.A.N. 1029, 1030.  The legislative

history speaks of protecting those marks that have an "aura" and explains that the

harm from dilution occurs "when the unauthorized use of a famous mark reduces

the public's perception that the mark signifies something unique, singular, or

particular."  See *Id.*  See also *S.Rep. No. 100–515*, at 7 (1988).  For example, such

harm occurs in the hypothetical cases of "DUPONT shoes, BUICK aspirin, and

KODAK pianos," according to the legislative history.  See *Moseley v. V. Secret*

*Catalogue, Inc.*, 537 U.S. 418, 431 (2003) (quoting *H.R.Rep. No. 104–374*, at 3

(1995), as reprinted in 1995 U.S.C.C.A.N. 1029, 1030).  This is true even though a

consumer would be unlikely to confuse the manufacturer of KODAK film with the

hypothetical producer of KODAK pianos.  See *Louis Vuitton Malletier S.A. v.*

*Haute Diggity Dog*, 507 F.3d 252, 268 (4th Cir.2007).  In short, a mark usually

will achieve broad-based fame only if a large portion of the general consuming

19

public recognizes that mark.  See *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911 (9th Cir.2002).  In other words, the mark must be a household name. See *Id*.

In the present case, it is unreasonable to suggest that Spectrum's trademark for synthetic urine has achieved sufficient fame to be a household name.  After all, Spectrum uses its trademark in connection with synthetic urine, certainly not a household product by any stretch of the imagination.  In fact, in discovery, URZ propounded the following Interrogatory No. 16:

> "INTERROGATORY NO. 16:  List the amount of money YOU spent annually in advertising each of the TRADEMARKS within the last five (5) years."  Dkt 103-1, p.23.

In response to Interrogatory No 16, Spectrum provided a document indicating that its annual advertising expenses did not exceed $200,000.  Dkt 103-1, p.4, ¶21.  In fact, Plaintiff's advertising expenses for one year was around a measly $10,000.  Dkt 103-1, p.4, ¶21.  Therefore, it is unreasonable to suggest that Spectrum's trademark used in connection with synthetic urine and with an annual advertising expenses under $200,000 would ever attain the type of fame or household name status that is required for a trademark dilution cause of action.  It is outright laughable to suggest that the "QUICK FIX" mark is famous the likes of DUPONT, BUICK, and KODAK.  As such, Spectrum's trademark dilution cause of action must be summarily dismissed.

20

Accordingly, the discovery sought by Spectrum relating to URZ's purchase and sale of QUICK FIX products is entirely unrelated to URZ's Motion for Summary Judgement which challenges Spectrum's trademark dilution claim based entirely on Spectrum's use of the trademark. As such, the District Court abused its discretion in using Fed.R.Civ.P. 56(d) to preclude URZ from filing its Motion for Summary Judgment on this issue.

## II. URZ HAS NO OTHER WAY TO OBTAIN RELIEF

Orders, such as the one issued by the District Court in this case, are not immediately appealable under the final judgment rule or the collateral order doctrine. See *United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.,* 444 F.3d 462, 471-472 (6th Cir. 2006). More important, URZ's hands have been metaphorically tied in this case by the District Court's order precluding URZ from filing any motion for summary judgment. After all, URZ has legitimate arguments that can potentially resolve this case or simplify it by summarily dismissing some or all of Spectrum's claims. However, URZ's hands have been tied because it has been precluded from raising these arguments with the District Court. Instead, URZ has being forced to endure lengthy and very costly discovery which may ultimately be moot in light of the potential enforceability of Spectrum's trademark due to its unlawful use. Forcing URZ to endure such costly discovery when it may all be proven to be unnecessary is not proper or efficient management

of this case by the District Court.

Even more, URZ does not have any other way to obtain relief in this matter other than through this Court. By precluding URZ from filing a motion for summary judgment, URZ is being forced to substantially run up its litigation expenses which it will likely not be able to appeal or recuperate at the end even if it prevails in this case. In other words, the District Court's order precluding URZ from filing any motion for summary judgment may reasonably result in manifest injustice to URZ. Only this Court can provide some relief at this time with this Petition.

## III.   THE WRIT IS APPROPRIATE UNDER THE CIRCUMSTANCES

It is undeniable that the District Court's Order will cause URZ to suffer at least some prejudice that cannot be corrected on appeal. After all, the District Court's Order essentially holds URZ as a hostage to this case to run up its litigation expenses at the mercy of its adversary, Spectrum. Such may reasonably result in manifest injustice that only this Court can mitigate or prevent altogether through this Petition.

Accordingly, a writ is appropriate under the circumstances.

# CONCLUSION

Based on the foregoing, Petitioner URZ respectfully requests this Court to issue a writ of mandamus directing the District Court to allow URZ to file its Motion for Summary Judgment.

November 4, 2024

Respectfully submitted,

/s/Louis F. Teran
Louis F. Teran
SLC LAW GROUP
1055 E. Colorado Blvd., Suite 500
Pasadena, CA 91106
Telephone: (818) 484-3217 x200
Facsimile: (866) 665-8877
Email:  Lteran@SLCLG.com

*Counsel for Petitioner*

<h1 style="text-align:center"><b><u>CERTIFICATE OF SERVICE</u></b></h1>

I hereby certify that on the 4th day of November, 2024 an electronic copy of the foregoing Petition for Writ of Mandamus was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system. In addition an electronic copy of the foregoing Petition for Writ of Mandamus is being served by email to Respondent's counsel using the email addresses identified below:

David B. Cupar
dcupar@mcdonaldhopkins.com

Matthew J. Cavanagh
mcavanagh@mcdonaldhopkins.com

Courtney Ervin
cervin@hicks-thomas.com

D. Ryan Cordell, Jr.
rcordell@hicks-thomas.com

In addition, I certify that on the 4th day of November, 2024, an electronic copy of the foregoing Petition for Writ of Mandamus was served by email to District Court Judge Hon. Charles Eskridge using the email address Jennelle_Gonzalez@txs.uscourts.gov.

/s/Louis F. Teran
Louis F. Teran

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.      This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,388 words, as determined by the word-count function of Microsoft Word 2016, excluding the parts of the brief exempt by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.      This brief complies with the typeface requirements of Federal of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

<u>/s/Louis F. Teran</u>
Louis F. Teran

# CERTIFICATE OF ELECTRONIC COMPLIANCE

I hereby certify that, in the foregoing brief filed using the Fifth Circuit CM/ECF document filing system, (1) the privacy redactions required by Fifth Circuit Rule 25.2.13 have been made, (2) the electronic submission is an exact copy of the paper document, and (3) the document has been scanned for viruses with the most recent version of Norton Security Premium Edition and is free of viruses.

/s/Louis F. Teran
Louis F. Teran

# **APPENDIX**

Order by the District Court issued on October 10, 2024 (Dkt 129)

And

Order by the District Court issued on May 3, 2024 (Dkt 110)

And

Texas Health & Safety Code §481.133

United States District Court
Southern District of Texas

**ENTERED**

October 10, 2024

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SPECTRUM LABORATORIES LLC, <br> Plaintiff, | § <br> § <br> § <br> § <br> § | CIVIL ACTION NO <br> 4:22-cv-03705 |
| vs. | § <br> § <br> § | JUDGE CHARLES ESKRIDGE |
| URZ TRENDZ LLC <br> Defendants. | § <br> § <br> § | |

**ORDER**

Pending are three motions. One is by Defendant URZ Trendz, LLC, requesting leave to file a motion for summary judgment. Dkt 121. Another is by Plaintiff Spectrum Laboratories, LLC, for sanctions due to Defendant's conduct during discovery and in this litigation. Dkt 122. A third is by Plaintiff for continuance until resolution of the sanctions issue. Dkt 125.

The motion by URZ with respect to summary judgment practice is DENIED. Dkt 121. It's apparent that a significant question exists as to URZ's compliance with discovery obligations, including this Court's prior ruling regarding ESI inspection and preservation. See Dkt 118. Those issues require resolution first.

The motion by Spectrum Laboratories for continuance and abatement of deadlines is GRANTED. Dkt 125. All deadlines are cancelled and will be reset as needed in the future.

The motion by Spectrum Laboratories for sanctions against URZ is hereby set for hearing in person on December 13, 2024, at 1:30 pm. Dkt 122.

So ORDERED.

Signed on October 10, 2024, at Houston, Texas.

_____

Hon. Charles Eskridge
United States District Judge

2

United States District Court
Southern District of Texas

**ENTERED**

May 03, 2024

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| SPECTRUM LABORATORIES, LLC, | § § § § § | CIVIL ACTION NO 4:22-cv-03705 |
| Plaintiff, | § | |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| URZ TRENDZ LLC, *et al*, Defendants. | § § | |

**ORDER**

The motion by URZ Trendz, LLC, seeking reconsideration of a recent discovery order is denied. Dkt 99; see Dkt 97.

A further discovery order will be entered separately, while resolving the disagreements noted on the proposed order as submitted by Spectrum Laboratories, LLC. Dkts 100 & 100-1.

The motion for summary judgment by URZ Trendz is denied without prejudice. Dkt 103. It may seek leave to file a further summary judgment motion after it has complied with its discovery obligations.

\*     \*     \*

Spectrum filed this action under the Lanham Act in October 2022 with respect to Quick Fix synthetic urine product. Dkt 1.

In March 2023, Spectrum served URZ Trendz with a subpoena to identify which entities provided URZ Trendz with the products alleged to be counterfeit in this action. Dkt 39. URZ Trendz was a non-party at the time and filed objections. Dkt 45-2. Spectrum amended the subpoena

accordingly, and a standard protective order was entered at the parties' request. Dkts 45 at 1–2 & 42.

URZ Trendz failed to comply with the subpoena. In May 2023, Spectrum filed a motion to compel, which was granted. Dkts 45 & 46. In June, Spectrum amended its complaint to add URZ as a defendant. Dkt 50. URZ Trendz filed a motion to dismiss, which was denied. Dkts 56 & 63.

The discovery issues continued into August. At a discovery hearing on August 29, 2023, it was determined that Spectrum's discovery requests "were proper and understandable, and that URZ Trendz hasn't been cooperative or proceeding in accordance with its discovery obligations under the Federal Rules of Civil Procedure." Dkt 63 at 1. The objections by URZ Trendz to discovery were overruled, and it was admonished regarding its lack of cooperation. Ibid.

Spectrum amended its complaint to seek a permanent injunction against URZ Trendz, along with damages and other equitable relief. Dkt 62 at 1. URZ Trendz responded with affirmative defenses and counterclaims. Dkt 64. Spectrum filed a motion to dismiss the counterclaims and to strike two of the affirmative defenses. Dkt 67. The motion was denied, with note that further discovery should proceed. Dkt 78.

While the above motions were pending, Spectrum by email provided notice of additional discovery concerns, to which URZ Trendz filed no response. Dkt 80 at 1. Spectrum was thus granted leave to bring a motion regarding URZ Trendz's discovery failures, including requests for electronic discovery to satisfy completeness of a responsive search. Id at 1–2.

Spectrum filed a motion for sanctions. Dkt 83. The motion was denied without prejudice, with the parties ordered to confer and create a discovery order similar to that submitted by Spectrum in prior filings. Dkt 97. It was further ordered that Spectrum would pay for the ESI vendor that would conduct the requested discovery. Id at 2. Spectrum followed the Court's instructions and filed a

proposed order, which included disagreements stated by URZ Trendz. Dkts 100 & 100-1.

Pending is a motion by URZ Trendz for reconsideration and various objections to the order for forensic discovery. Dkt 99; see Dkts 97 (order denying motion as to sanctions but granting as to further specification and enforcement of prior discovery orders), 53 (order denying motion to compel but ordering URZ to comply with discovery obligations within seven days) & 63 (order requiring URZ to comply with specific discovery requests).

Nothing supports reconsideration. URZ Trendz has been provided multiple opportunities to comply with discovery, which it has decidedly refused to do. Its many objections have been considered and nothing new by way of law or evidence is brought to light. And now, over a year after first being subpoenaed, URZ Trendz has still failed to comply with either its discovery obligations or this Court's orders. And its attitude approaches—if not already passing into—bad faith.

*   *   *

The motion by URZ Trendz LLC for reconsideration of discovery order is DENIED. Dkt 99.

The discovery order as presented by Spectrum Laboratories, with the disagreements between the parties addressed and resolved, will be entered separately. Dkt 100.

The motion for summary judgment by URZ Trendz is DENIED WITHOUT PREJUDICE. Dkt 103. Spectrum justifiably requested that responsive briefing on the motion be deferred until it obtains its requested discovery. Dkt 106. URZ Trendz may seek leave to file a summary judgment motion after it has complied with its discovery obligations.

SO ORDERED.

Signed on May 3, 2024, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge

# TEXAS HEALTH & SAFETY CODE §481.133

## Offense: Falsification of Drug Test Results

(a) A person commits an offense if the person knowingly or intentionally uses or possesses with intent to use any substance or device designed to falsify drug test results.

(b) A person commits an offense if the person knowingly or intentionally delivers, possesses with intent to deliver, or manufactures with intent to deliver a substance or device designed to falsify drug test results.

(c) In this section, "drug test" means a lawfully administered test designed to detect the presence of a controlled substance or marihuana.

(d) An offense under Subsection (a) is a Class B misdemeanor.

(e) An offense under Subsection (b) is a Class A misdemeanor.

Added by Acts 1991, 72nd Leg., ch. 274, Sec. 1, eff. 9/1/1991. Renumbered from Health & Safety Code Sec. 481.131 by Acts 1991, 72nd Leg., 1st C.S., ch. 14, Sec. 8.01(17b), eff. 11/12/1991.